UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL R. APA, SR., ) | |
| ) | |
| Plaintiff, ) | No. 1:22-CV-03760 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| JAMES APA, FRANK SALERNO, ) | |
| SALERNO LAW GROUP, P.C., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Michael Apa, Sr. brings this lawsuit against James Apa, Frank Salerno, and Salerno Law Group, P.C. (for convenience's sake, Salerno and Salerno Law Group are collectively referred to as the Salerno Defendants). R.1-1, Compl.[1] Apa Sr. originally brought this lawsuit in Illinois state court, but this case was removed to this Court in July 2022.[2]

Apa Sr. brings state law claims against his son, James,[3] and the Salerno Defendants for allegedly engaging in a fraudulent scheme to deprive Apa Sr. of proceeds from the 2018 sale of his intermodal-trucking business and related companies. James now moves to dismiss Apa Sr.'s claims for fraud, breach of fiduciary duty, and unjust enrichment. R. 14, James's Mot. to Dismiss. The Salerno Defendants move to dismiss the claims for aiding and abetting fraud and for breach of fiduciary duty. R. 17,

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.
[2] The Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a).
[3] The Court refers to James Apa by his first name to avoid confusion.

1

Salerno Defs. Mot. to Dismiss. James also moves to strike (and the Salerno Defendants move to dismiss) the claims for prejudgment interest, punitive damages, and attorney's fees. For the reasons discussed below, the motions to dismiss and the motion to strike are granted in part and denied in part.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In 1994, Apa Sr. created Fore Transportation, a Chicago-based trucking business. Compl. ¶ 7. Until 2016, Apa Sr. was the sole owner of Fore, as well as related entities A.M.A. Marketing Corporation, LLC, and Apa Holdings, LLC (referred to as Holdings in this Opinion). *Id.* ¶¶ 7–8. Before May 2016, Apa Sr. turned over the daily operations of Fore and Holdings (together, the Companies) to his son, James, but Apa Sr. retained ultimate control of the Companies. *Id.* ¶ 9. In addition to James taking increasing responsibility over operating Fore and Holdings, James handled certain of Apa Sr.'s personal affairs and Apa Sr. increasingly reposed trust and confidence in James. *Id.* ¶ 10.

In May 2016, Apa Sr. sought estate-planning legal advice from attorney Salerno of the SLG firm. Compl. ¶ 12. Apa Sr. brought James and his other son, William, to his meeting with Salerno. *Id.* ¶ 13. Apa Sr. shared his goal to maintain ownership and control over the Companies until either selling them or his death. *Id.* ¶ 12. Apa Sr. expressed his goal that the transfer of ownership of the Companies be executed in a tax-efficient manner and provide income to him and his wife. *Id.* ¶¶ 12, 14–15.

2

Salerno recommended to Apa Sr. that he use irrevocable trusts to execute this goal. *Id.* ¶ 15.

After the meeting, Salerno prepared several estate-related documents, including an irrevocable business trust; an irrevocable real estate trust; a memorandum of partial gift partial sale; a memorandum of sale; two promissory notes (the Fore Note and the Holdings Note, together the Notes); a pledge agreement; and a stock power (all together, the Trust Documents). Compl. ¶¶ 16–20, 29–33. The memorandum of partial gift partial sale provided for the transfer of Fore and A.M.A. Marketing into the business trust for a purchase price of around $11.48 million, with the purchase price being paid, in part, by the Fore Note. *Id.* ¶ 18. The memorandum of sale provided for the transfer of Holdings into the real estate trust for $2 million, with the purchase price being paid, in part, by the Holdings Note. *Id.* ¶ 19. The irrevocable trusts (the Trusts) designated James and William as beneficiaries. *Id.* ¶ 20.

Shortly before signing the Trust Documents, Apa Sr. entered into an oral agreement with James and William. Compl. ¶ 22. Under the oral agreement, Apa Sr. would receive around $8 million (plus interest, net of taxes) on the Notes, after the Trusts paid taxes on the proceeds from the sale of the Companies. *Id.* Based on Apa Sr.'s trust in James and William, he did not demand the agreement be in writing, nor did he obtain legal counsel for the oral agreement. *Id.* ¶ 23. Also, based on the oral agreement, Apa Sr. designated James and William as co-trustees of the Trusts. *Id.* ¶ 25.

3

Salerno was allegedly aware of the oral agreement. Compl. ¶ 24. But Salerno failed to advise Apa Sr. that the proposed Trusts entailed Apa Sr. relinquishing control of the Companies' operations, any potential sale, and the disposition of proceeds from a sale. *Id.* ¶¶ 28, 31. Upon Apa Sr. signing the Trust Documents, the Trusts obtained control over the Companies. *Id.* ¶ 33.

In 2017, James began negotiating the sale of the Companies. Compl. ¶ 35. Salerno represented James and Williams as trustees of the Trusts in these negotiations and in their later dealings with Apa Sr. *Id.* ¶ 36. During negotiations of the sale of the Companies, James limited his communications with Apa Sr. and withheld drafts of the deal documents. *Id.* ¶ 45. According to Apa Sr., Salerno knew that James was intentionally restricting Apa Sr. from negotiations. *Id.*

At some point before the closing of the sale, Apa Sr. hired an independent lawyer, Anthony Madonia. Madonia asked Salerno to forward him the deal documents. Compl. ¶¶ 47, 69. One day before the scheduled closing, Salerno emailed Madonia a "High Level Deal Summary." *Id.* ¶¶ 47–48. Because the summary was unclear on how much Apa Sr. would be paid from the sale, Madonia asked Salerno how the tax burden on Apa Sr. arising out of the sale would be handled. *Id.* ¶¶ 48, 50. At some point, Salerno reassured Madonia that Apa Sr. would receive the money needed to pay the taxes, initially proposing that the funds be escrowed. *Id.* ¶¶ 50, 72. But when Madonia objected to the escrow, Salerno expressed that James and William would agree to pay to Apa Sr. the money needed to cover the taxes. *Id.* ¶ 72.

Before the Closing, Madonia reaffirmed to Salerno that Apa Sr.'s understanding was that the parties would give him the full amount needed to pay the taxes, so that the net proceeds to Apa Sr. would remain around $8 million, plus interest. Compl. ¶¶ 51, 77. During these communications with Madonia, Salerno knew (and did not disclose) that James planned to divert to himself and William the monies owed to Apa Sr. *Id.* ¶¶ 101, 110.

On the scheduled date of the closing, James called Apa Sr. and pressured him to sign the closing documents. Compl. ¶ 51. During these communications, and before Apa Sr. signed the documents, Salerno and James did not disabuse Madonia of his and Apa Sr.'s understanding that the parties would cover the entirety of Apa Sr.'s tax burden. *Id.* ¶ 56. Based on his understanding that he would be fully paid on the Notes and receive additional proceeds from the sale of the Companies to pay the taxes incurred on the Sale, Apa Sr. signed the closing documents. *Id.* ¶ 59.

James and William (with Salerno) caused Apa Sr. to be presented with release agreements, which recited that Apa Sr. had been fully paid on the $6 million Fore Note and $2 million Holdings Note. Compl. ¶¶ 60, 63. But James and Salerno allegedly knew that these statements were false when the agreements were presented to Apa Sr. and would be false post-closing because James planned for him and William to keep for themselves approximately $1.4 million of the $6 million note and $464,100 of the $ 2 million note. *Id.* ¶¶ 61, 64. James signed both releases despite knowing they were false. *Id.* ¶¶ 62, 65. Also, James conditioned the closing of the sale on Apa Sr. agreeing to share in costs incurred in the closing. *Id.* ¶ 66. Indeed, James and William

5

demanded that Apa Sr. pay pro-rated commissions (of around $236,375) that the Trusts were obligated to pay on the sale; James and William refused to withdraw this demand when Apa Sr. objected. *Id.* ¶ 68.

The Companies were sold for $34.7 million. Compl. ¶ 74. Since the time of the sale's closing, James has refused to turn over to Apa Sr. the $2.45 million or so in proceeds that James diverted to himself and William that should have been paid to Apa Sr. to cover the taxes on the sale (around $1.87 million in principal and $345,000 due under Notes, plus the $236,375 of commissions). *Id.* ¶ 84.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[4] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under [insert statute if applicable]. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Thus, Rule 9(b) requires that [party]'s complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). Put differently, her complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (cleaned up).

III. Analysis

A. James

The Defendants move to dismiss all of the claims, but Apa Sr.'s fraud, breach of fiduciary duty, and unjust enrichment claims survive dismissal. Apa Sr. concedes that dismissal is proper on the fraudulent-conveyance claim.

1. Fraud

James argues Apa Sr.'s fraud allegations do not meet the level of particularity demanded by Rule 9(b). To successfully state a fraud claim, generally speaking a plaintiff "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (cleaned up). Here, the fraud allegations are well more than enough to satisfy the particularity requirement of Rule 9(b).

In the context of this case's circumstances, Apa Sr. has identified the "who, what, when, where, and how" of the fraud. *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Apa Sr. has identified the who (James and his lawyer) and the what (the allegedly false statement that Apa Sr. would be fully paid on the Notes with proceeds from the sale and the release agreements). Apa Sr. sets forth a timeline of the alleged fraudulent scheme, including that James intentionally kept Apa Sr. in the dark about the accurate features of the sale until the eve of the closing; failed to disclose James' alleged intent to keep the monies owed to Apa Sr. when discussing the sale from at least January to February 2018; and caused Apa Sr. to be presented with the allegedly false release agreements in February 2018. As for the "where" and "how" of the alleged scheme, Apa Sr. describes communications

among Apa Sr., James, Salerno, and Madonia leading up to the sale and alleges that based on James's alleged misrepresentations and his (misplaced) trust in James, Apa Sr. signed onto the sale.

Moreover, Apa Sr. alleges that James "knew" that the release agreements were false, Compl. ¶¶ 61, 64, and that James "intentionally misrepresented" to Apa Sr. that he would be fully paid on the Notes. *Id.* ¶¶ 86, 88. No more particularity is needed on those mental states because Civil Rule 9(b) allows that "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Armstrong v. Daily*, 786 F.3d 529, 547 (7th Cir. 2015). Overall, Apa Sr.'s fraud allegations suffice in giving James "adequate notice of the specific activity that the plaintiff claims constituted the fraud so that [James] may file an effective responsive pleading." *Lachmund v. ADM Inv. Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999).

Next, the Defendants argue that the Agreement is unenforceable under the Illinois Statute of Frauds. *See* 740 ILCS 80/1. First, the Defendants argue that the alleged agreement was a promise to pay the debt or default of another. The Statute of Frauds bars enforcement of an unwritten promise to pay another's debt for an existing debt at the time of the alleged guarantor's assurances. *See Publishers Advert. Associates, Inc., v. Wessel Co. Inc.*, 747 F.2d 1076, 1079, 1080 (7th Cir. 1984). The Statute, however, does not apply to the alleged agreement here. For one, the agreement centered on Apa Sr. being paid around $8 million (plus interest, net of taxes paid by the Trust) from the sale proceeds—there was no promise that *James* would pay Apa Sr.'s taxes. What's more, the Statute of Fraud does not apply to the

9

agreement because the Statute does not apply to an oral promise made to a *debtor* (here, Apa Sr.) and not the creditor. *See Beaver v. Grand Prix Karting Ass'n, Inc.*, 246 F.3d 905, 910 (7th Cir. 2001); *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1249 (N.D. Ill. 1991) ("Because count III alleges Connaught's breach of a promise to the *debtor* to answer for his tax liability to the government, the [Statute] defense is not pertinent") (emphasis in original). Lastly, the Statute does not apply because when the 2016 agreement was allegedly made, the debt—taxes on the 2018 Sale—did not even exist yet. *See Wessel Co. Inc.*, 747 F.2d at 1080–81 (oral promise to pay another's debt before debt exists falls outside the Statute).

Second, the Defendants argue—but are wrong again—that the agreement is unenforceable under the Statute of Frauds because it could not be performed within one year. The Statute bars the enforcement of oral agreements that are not "*capable* of being performed within a year, *whether or not that contingency is likely.*" *Lamaster Chicago & NE Ill. Dist. Council*, 766 F. Supp. 1497, 1507 (N.D. Ill. 1991) (emphases added). Here, however, the alleged agreement was *capable* of being performed within one year. Yes, the alleged agreement was made in 2016 and the sale did not happen until 2018—but that does not mean that the agreement was *incapable* of being performed in one year. Nothing about the agreement itself or the underlying circumstances made that impossible. So the Statute does not apply to the Agreement. *See Meyer v. Marilyn Miglin, Inc.*, 652 N.E.2d 1233, 1240 (Ill. App. Ct. 1995).[5]

---

[5] The Court need not address Apa Sr.'s alternative argument of performance on the agreement because the Statute does not apply to the agreement for other reasons.

10

## 2. Breach of Fiduciary Duty

The claim for breach of fiduciary duty poses a closer question. James argues that Apa Sr. fails to plead a fiduciary relationship. *Neade v. Portes*, 739 N.E.2d 496 (Ill. 2000) (stating a fiduciary duty claim requires the existence of a fiduciary relationship). Although it is a close call, at the pleading stage, Apa Sr. presents enough factual allegations of a fiduciary relationship between James and himself to survive dismissal.[6]

It is true, as James argues, that the "mere fact of family relation does not create a fiduciary relationship as a matter of law." *Apple v. Apple*, 95 N.E.2d 334, 337 (Ill. 1950); *Kurtz v. Solomon*, 656 N.E.2d 184, 191 (Ill. App. Ct. 1995). Apa. Sr., however, goes beyond relying solely on a family relationship. He alleges that James assumed more and more responsibility over the daily operations of the Companies and handled some of Apa Sr.'s most important personal affairs, like negotiating for Apa Sr. on hospitalization and insurance issues; communicating with Apa Sr.'s accountant for preparing Apa Sr.'s tax returns; handling the payment of Apa Sr.'s property taxes; and handling buying personal cars for Apa Sr. That is more than a mere family relationship.

As James acknowledges, *see* James Apa's Mot. to Dismiss Mem. at 9, the question of whether a fiduciary relationship exists may turn on factors like the "degree of

---

[6]Apa Sr. fails to allege how James owes him a fiduciary duty as trustee; Apa Sr. does not allege that he is a beneficiary of the Trusts. *See In re Est. of Swiecicki*, 477 N.E.2d 488, 490 (Ill. 1985). But Apa Sr. sufficiently alleges a fiduciary relationship on other grounds, as described in the text.

11

kinship, disparity in age, health, mental condition, and education, and the extent to which a servient party entrusted the handling of her business and financial affairs to a dominant party and reposed faith and confidence in her." *In re Estate of Henke*, 561 N.E.2d 314, 318 (Ill. App. Ct. 1990). Apa Sr. alleges that he reposed trust in James, he was 72 years old, and that James handled some of his affairs.

All of those allegations of a fiduciary relationship suffice. *See Pilot v. Focus Retail Property I, LLC*, 2010 WL 2836710, at *2 (N.D. Ill. 2010) (denying dismissal of a fiduciary-duty claim, because the existence of a fiduciary duty depended on "the specific details of the parties' relationship, and those details have not been fully developed at this stage of litigation"). Time will tell—or more precisely, discovery will tell—whether Apa Sr. can gather enough evidence to prove a fiduciary relationship. The actual facts might (or might not) be an obstacle to proving the breach of fiduciary duty claim, but the pleading standard has been satisfied.

### 3. Unjust Enrichment

The Defendants next argue that the Notes formed an express contract, so the contract forecloses recovery under unjust enrichment. Unjust enrichment is inapplicable "where an express contract, oral or written, governs the parties' relationship." *Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. 1 Dist., 2012). That much is generally true. But when a plaintiff bases his unjust enrichment claim on a *tort* theory, like fraud, then the contract does not preclude an unjust enrichment claim. *Liberty Mut. Ins. Co. v. Decking & Steel, Inc.*, 301 F. Supp. 2d 830, 835 (N.D. Ill. 2004)

(noting "unjust enrichment, may be pursued in the presence of a written contract between the parties only if it sounds in tort, rather than in quasi-contract").

Apa Sr.'s unjust-enrichment claim is based on the torts of fraud and breach of fiduciary duty, not on an express contract. What's more, taking Apa Sr.'s allegations as true, the Notes do not govern the relationship between Apa Sr. and *James*, including on the alleged diversion of funds. Instead, the Notes govern the financial transactions between the *Trusts* and Apa Sr. The unjust-enrichment claim survives.

### B. The Salerno Defendants

The Court denies the Salerno Defendants' motion to dismiss the claims for aiding and abetting fraud and breach of fiduciary duty. (The Salerno motion does not address the professional negligence claim, so that claim survives. Apa Sr. concedes dismissal on the claim for aiding and abetting fraudulent conveyance, so that claim is dismissed.)

The Salerno Defendants contend that the claim for aiding and abetting fraud should be dismissed because Apa Sr. fails to state a fraud claim against James. But, as discussed earlier, *see supra* § III.A.1., Apa Sr.'s allegations satisfy the particularity standard of Rule 9(b). Next, the Salerno Defendants argue that the agreement to cover taxes does not exist, so the aiding and abetting claim must be dismissed. At this pleading stage, though, Apa Sr. more than adequately pleads that the agreement exists—he supplies facts on the parties, the subject, the obligations, and timeframe.

13

The Salerno Defendants next argue that Apa Sr. failed to allege with particularity that Salerno knew of and assisted the alleged fraud.[7] For a claim of aiding and abetting a fraud, a plaintiff must plead that "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant is aware of his role when he provides the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Fifth Third Mortg. Co. v. Kaufman*, 934 F.3d 585, 588 (7th Cir. 2019).

Apa Sr. alleges that Salerno was "generally aware at least by late January and through [the closing] that James planned to have James and William take for themselves the $1,865,592.75 plus interest that should have been paid to Apa, Sr." Compl. ¶ 23. Apa Sr. also alleges that Salerno "knew" of the alleged agreement in February 2018, before the closing of James's plan, and that Salerno was "made aware" of the agreement. *Id.* ¶¶ 24, 73. These allegations on Salerno's knowledge suffice because, under Rule 9(b), knowledge "may be alleged generally." Fed. R. Civ. P. 9(b); *see also McKinney v. Panico*, 2022 WL 4551695, at *15 (N.D. Ill. Sept. 29, 2022) ("The complaint also alleges generally that [defendants] were aware of their role in the fraud

---

[7]The Court only considers allegations in complaint in this lawsuit. The Court does not consider allegations in the prior lawsuit, including those relating to Madonia's representation of Apa Sr. In the Complaint, Apa Sr. only describes Madonia's representation toward the end of negotiations on the Sale. The Court rejects the Salerno Defendants' contention that Madonia representing Apa Sr. negates fraud and supporting an accord and satisfaction, given Apa Sr.'s allegations of a fraudulent scheme.

14

and that they knowingly and substantially assisted the fraud, which suffices under Rule 9(b).") (cleaned up).

More importantly, Apa Sr. alleges that Salerno knowingly and substantially assisted the alleged fraud by misrepresenting and failing to disclose that James planned to divert the funds; conveying to Madonia that James and Williams would agree to pay Apa Sr. the amounts needed to cover the taxes on the sale despite knowing of the diversion plan; assisting in causing the release agreements to be presented to Apa Sr.; and pressuring Apa Sr. to sign the closing documents. Compl. ¶¶ 53, 60, 63, 73, 95. These allegations suffice to support knowing and substantial assistance of the fraud. In sum, Apa Sr. sufficiently alleges that Salerno knowingly and substantially assisted the scheme. *See Damian v. Courtright*, 2021 WL 3144447 (N.D. Ill. July 26, 2021) (denying dismissal of a claim for aiding and abetting a fraud because the plaintiff alleged a wrongful act, general knowledge, and knowing and substantial assistance). Again, discovery might undermine this claim eventually, but this is the pleading stage.

Lastly and briefly, the Salerno Defendants also argue that the claim for aiding and abetting a breach of fiduciary duty fails because Apa Sr. failed to plead a fiduciary relationship. For the reasons explained earlier, *see supra* § III.A.2, the complaint adequately pleads a fiduciary relationship. The claim survives.

15

### C. Damages and Fees

The Defendants also challenge certain specific forms of relief, arguing that the Cour ought to reject the availability of particular kinds of relief as a matter of law right now.

**Pre-Judgment Interest.** James and the Salerno Defendants respectively move to strike and dismiss the request for prejudgment interest.[8] Apa Sr. contends that he is entitled to prejudgment interest under the Interest Act, which allows interest "on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance" and "on money withheld by an unreasonable and vexatious delay of payment." 815 ILCS 205/2.

Apa Sr.'s allegations support that the damages sought are "liquidated or subject to an easy determination by calculation or computation," and thus are subject to the Interest Act. *See Lyon Metal Products, L.L.C. v. Protection Mut. Ins. Co.*, 747 N.E.2d 495, 510 (Ill. App. 2 Dist., 2001). For prejudgment interest here, damages "need only be sufficiently ascertainable that the other party can have a good idea of the total for which it may be liable." *Chamberlain Mfg. Corp. v. Maremont Corp.*, 1995 WL 769782, at *1 (N.D. Ill.,1995); *Dallis v. Don Cunningham & Assocs.*, 11 F.3d 713, 719 (7th Cir. 1993) (noting an amount due is unliquidated if it requires "judgment,

---

[8]The Court rejects James's contention the prejudgment interest should be struck because Apa Sr. fails to sufficiently allege that any money was due and that the agreement was unenforceable under the statute of frauds. That is just a repeat of a challenge to the adequacy of the underlying claims.

16

discretion, or opinion, as distinguished from calculation or computation"). Apa Sr. sufficiently alleges that the amounts due are easily calculable; he seeks an amount based on the tax rate to the net profits from the Sale and commissions already paid. Alternatively, if Apa Sr. wins on the fraud or fiduciary-duty claims, then he might well be able to show that the delay in payment was unreasonable or vexatious. At this pleading stage, the Court denies dismissal of the request for prejudgment interest, except as to the professional negligence claim (for which Apa Sr. concedes is not covered by prejudgment interest). R. 25, Pl.'s Resp. at 20.

**Punitive Damages.** At this stage of the case, Apa Sr.'s allegations suffice for the potential recovery of punitive damages against James. *See Eeckert v. Kemper Fin. Servs., Inc.*, 1997 WL 223065 at *4 (N.D. Ill. Mar. 31, 1997) ("In Illinois, punitive damages are available when torts are committed with fraud … or oppression.") (cleaned up). Apa Sr. has adequately alleged fraud committed by an alleged fiduciary (James) and that James extracted a concession from Apa Sr. to pay commissions; pressured Apa Sr. to sign closing documents and the release agreements, despite knowing that James intended to keep monies for himself and William that were owed to Apa Sr.; and exploited Apa Sr.'s trust and confidence to execute this alleged fraudulent scheme. The punitive-damages request remains intact against James.

That said, the Court dismisses the punitive-damages request against the Salerno Defendants. Punitive damages against the Salerno Defendants are precluded under Illinois law because the claims against them arise out of the provision of legal services. 735 ILCS 5/2-1115. Apa Sr. brings a professional negligence claim against

the Salerno Defendants and the other claims against the Salerno Defendants arise out of their legal representation of James and William and legal services on the sale. *See Calhoun v. Rane*, 599 N.E.2d 1318, 1323 (1992) (reasoning that Section 2-1115's prohibition on punitive damages applies to fraud and other claims when they arise from the provision of legal services); *see also Brush v. Gilsdorf*, 783 N.E.2d 77, 80 (Ill. App. 3 Dist., 2002).[9] No punitive damages are recoverable against the Salerno Defendants.

**Attorneys' Fees.** James and the Salerno Defendants are correct that the American Rule, which says that each side in a lawsuit generally bears their on fees unless a statute or contract says otherwise, precludes attorney's fees in this case. Apa Sr. cites to no statutory or contractual basis for recovering fees. The Court strikes the request for attorneys' fees.

### IV. Conclusion

James Apa's motion to dismiss is denied on the claims for fraud, breach of fiduciary duty, and unjust enrichment. James Apa's motion to strike is denied for prejudgment interest and punitive damages, but granted on attorney's fees. The Salerno Defendants' motion to dismiss is denied on the claims for aiding and abetting fraud and breach of fiduciary duty, and the request for prejudgment interest remains intact against the Salerno Defendants. But punitive damages and attorneys' fees are not

---

[9]Because punitive damages against the Salerno Defendants are already dismissed, the Court need not address the Salerno Defendants' argument that the Illinois Supreme Court has the exclusive authority to regulate legal profession, precluding punitive damages.

18

recoverable against the Salerno Defendants. As agreed, the claims for fraudulent conveyance and aiding and abetting fraudulent conveyance are dismissed. The professional negligence claim survives.

The Defendants shall file their answers by October 16, 2023. On or before October 23, 2023, the parties shall confer and file a joint status report proposing a discovery schedule now that the dismissal motions have been decided. In the meantime, the parties must reassess their settlement positions and engage in settlement negotiations as well. The status report must cover that topic too. The status hearing of October 6, 2023, is reset to October 27, 2023.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2023